Konrad RADASZEWSKI, by Cecelia RA-DASZEWSKI, his duly appointed guardian of the person and estate, Appellant,

v.

TELECOM CORPORATION, Appellee,

and Flexi–Van Leasing, Inc.

Konrad RADASZEWSKI, by Cecelia RA-DASZEWSKI, his duly appointed guardian of the person and estate, Appellee,

v.

TELECOM CORPORATION, Appellant,

and Flexi–Van Leasing, Inc.

Nos. 91–1342, 91–1343.

United States Court of Appeals, Eighth Circuit.

Submitted June 11, 1992.

Decided Nov. 12, 1992.

Rehearing Denied Dec. 14, 1992.

Bart L. Strother, of Kansas City, MO, argued (Max W. Foust, and James P. Frickleton, on the brief), for appellant.

Robert Christopher Abele, Kansas City, MO, argued (S. Michael Thomas, on the brief), for appellee.

Before RICHARD S. ARNOLD, Chief Judge, HEANEY, Senior Circuit Judge, and MAGILL, Circuit Judge.

RICHARD S. ARNOLD, Chief Judge.

This is an action for personal injuries filed on behalf of Konrad Radaszewski, who was seriously injured in an automobile accident on August 21, 1984. Radaszewski, who was on a motorcycle, was struck by a truck driven by an employee of Contrux, Inc. The question presented on this appeal is whether the District Court had jurisdiction over the person of Telecom Corporation, which is the corporate parent of Contrux. This question depends, in turn, on whether, under Missouri law, Radaszewski can "pierce the corporate veil," and hold Telecom liable for the conduct of its subsidiary, Contrux, and Contrux's driver. The District Court held that it lacked jurisdiction. We agree, though for different reasons.

## I.

■ In general, someone injured by the conduct of a corporation or one of its employees can look only to the assets of the employee or of the employer corporation for recovery. The shareholders of the corporation, including, if there is one, its parent corporation, are not responsible. This is a conscious decision made by the law of every state to encourage business in the corporate form. Obviously the decision has its costs. Some injuries are going to go unredressed because of the insolvency of the corporate defendant immediately involved, even when its shareholders have plenty of money. To the general rule, though, there are exceptions. There are instances in which an injured person may "pierce the corporate veil," that is, reach the assets of one or more of the shareholders of the corporation whose conduct has created liability. In the present case, the plaintiff seeks to hold Telecom Corporation liable for the conduct of an employee of its wholly owned subsidiary, Contrux, Inc.

Under Missouri law, a plaintiff in this position needs to show three things. The leading case is *Collet v. American National Stores, Inc.*, 708 S.W.2d 273 (Mo.App. 1986). The Missouri Court of Appeals had this to say:

A tripartite test has been developed for analysis of the question. To "pierce the corporate veil," one must show;

(1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

(2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and

(3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Id.* at 284.[1]

It is common ground among all parties that Telecom, as such, has had no contact

---

1. In a submission made shortly after the oral argument under Fed.R.App.P. 28(j), plaintiff

claims that only a two-part test must be met. He cites *Jack Swall v. Custom Automotive Ser-*

with Missouri. If it is subject to jurisdiction over its person in Missouri courts, it is only because of the conduct of Contrux, its subsidiary. So the issue of jurisdiction over the person depends on whether the corporate veil of Contrux can be pierced to bring Telecom into the case. As it happens, this is also the question upon which Telecom's substantive liability depends. (We assume for present purposes that Contrux is liable—this has not yet been proved.) Telecom raised the issue by filing a motion to dismiss the complaint for lack of jurisdiction under Fed.R.Civ.P. 12(b)(2) and for failure to state a claim under 12(b)(6). The parties have treated the matter as one of jurisdiction, and so will we, but in fact the underlying issue is the same: is Telecom liable for what Contrux did? [2]

Initially, the District Court granted Telecom's motion to dismiss on the ground that the first element of the *Collet* formulation, control, had not been met. This ruling was certified for interlocutory appeal under 28 U.S.C. § 1292(b), and we reversed. *Radaszewski v. Contrux, Inc.*, 891 F.2d 672 (8th Cir.1989). We held that, at least as a matter of pleading, Radaszewski had alleged sufficient facts to satisfy the requirement of control. We further held that the District Court had not allowed plaintiff enough time for discovery. The judgment dismissing the complaint was reversed, and the cause remanded for additional discovery and for reconsideration by the District Court of the motion to dismiss. On remand, we said, plaintiff would need

> to show that Telecom's control of Contrux and Contrux's undercapitalization [this term, as we shall see, is used as a sort of proxy for the second element of

the *Collet* formulation—improper motive] proximately caused his injury in order for the district court to exercise personal jurisdiction over Telecom.

891 F.2d at 675.

The District Court has now permitted the additional discovery, and we have a full documentary record. It has also reconsidered the motion to dismiss, and has again granted it. As to the second element of the *Collet* test (improper or unjust use of the subsidiary), the District Court held that plaintiff had made a sufficient showing to survive a motion to dismiss. But as to the third element, proximate cause, the District Court ruled for the defendant. No injury has been caused to the plaintiff by Telecom's control and use of its subsidiary, the Court reasoned, because the plaintiff has not yet established that the subsidiary is liable to him for anything. Only if liability is established, and plaintiff then unsuccessfully attempts to collect from Contrux, would it appear that the parent's misuse of the corporate form, as, for example, by putting Contrux into business with insufficient capital, had done any harm to Radaszewski. On this basis, the District Court dismissed the complaint of Radaszewski against Telecom for lack of jurisdiction over Telecom's person. The dismissal was without prejudice, presumably on the theory that, if Radaszewski should establish Contrux's liability to him, and if the judgment should be uncollectible, Radaszewski could then re-file against Telecom. This ruling, like the previous one, was certified for interlocutory appeal under 28 U.S.C. § 1292(b). We granted leave to appeal, and the case is again before us.

---

*vices, Inc.,* 831 S.W.2d 237 (Mo.App., W.D.1992), in an attempt to prove that the third element quoted in text from *Collet,* the element of proximate cause, is no longer part of the law of Missouri. We doubt the validity of this claim. *Swall* does not cite *Collet,* and, under the facts of *Swall,* the element of proximate cause was clearly met. It is true that *Swall,* when setting out the "test" under Missouri law, mentions only the first two of the *Collet* elements, but we are inclined to think that this was done simply because only the first two of the elements were in issue in *Swall.* In any case, our decision on

this appeal does not turn on the third element, so we need not pursue this line of analysis.

**2.** The complaint named as a defendant, in addition to Telecom, Contrux, and Contrux's driver, Flexi–Van, Inc., the owner of the trailer that Contrux was leasing, and that was involved in the accident. In addition to moving to dismiss the complaint, Telecom also moved to dismiss a cross-claim filed against it by Flexi–Van. The District Court denied this motion, but this action is not before us on appeal. All claims by or against Flexi–Van, Inc., have been settled.

## II.

For convenience, we quote again the second element of the *Collet* formulation. In order to pierce the corporate veil, a plaintiff must show, among other things, that the defendant's control of a subsidiary has

been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights....

*Collet,* 708 S.W.2d at 284. To satisfy this second element, plaintiff cites no direct evidence of improper motivation or violation of law on Telecom's part. He argues, instead, that Contrux was undercapitalized.

Undercapitalizing a subsidiary, which we take to mean creating it and putting it in business without a reasonably sufficient supply of money, has become a sort of proxy under Missouri law for the second *Collet* element. On the prior appeal, for example, we said that "Missouri courts will disregard the existence of a corporate entity that is operated while undercapitalized." 891 F.2d at 674. *Accord, Grote Meat Co. v. Goldenberg,* 735 S.W.2d 379 (Mo.App. 1987); *Collet, supra,* 708 S.W.2d at 286–87. The reason, we think, is not because undercapitalization, in and of itself, is unlawful (though it may be for some purposes), but rather because the creation of an undercapitalized subsidiary justifies an inference that the parent is either deliberately or recklessly creating a business that will not be able to pay its bills or satisfy judgments against it. This point has been made clear by the Supreme Court of Missouri. In *May Department Stores Co. v. Union Electric Light & Power Co.,* 341 Mo. 299, 327, 107 S.W.2d 41, 55 (1937), the Court found an improper purpose in a case where a corporation was "operating it without sufficient funds to meet obligations to those who must deal with it." Similarly, in *Consolidated Sun Ray, Inc. v. Oppenstein,* 335 F.2d 801 (8th Cir.1964), we said:

Making a corporation a supplemental part of an economic unit and operating it without sufficient funds to meet obligations to those who must deal with it would be circumstantial evidence tending

to show either an improper purpose or reckless disregard of the rights of others.

*Id.* at 806–07.

Here, the District Court held, and we assume, that Contrux was undercapitalized in the accounting sense. Most of the money contributed to its operation by Telecom was in the form of loans, not equity, and, when Contrux first went into business, Telecom did not pay for all of the stock that was issued to it. This is a classic instance of watered stock, of putting a corporation into business without sufficient equity investment. Telecom in effect concedes that Contrux's balance sheet was anemic, and that, from the point of view of generally accepted accounting principles, Contrux was inadequately capitalized. Telecom says, however, that this doesn't matter, because Contrux had $11,000,000 worth of liability insurance available to pay judgments like the one that Radaszewski hopes to obtain. No one can say, therefore, the argument runs, that Telecom was improperly motivated in setting up Contrux, in the sense of either knowingly or recklessly establishing it without the ability to pay tort judgments.

In fact, Contrux did have $1,000,000 in basic liability coverage, plus $10,000,000 in excess coverage. This coverage was bound on March 1, 1984, about five and one-half months before the accident involving Radaszewski. Unhappily, Contrux's insurance carrier became insolvent two years after the accident and is now in receivership. (This record does not show the financial status of the receivership. We thus do not know whether any money would ever be available from the insurance company to pay a judgment in favor of Radaszewski, if he obtains one.) But this insurance, Telecom points out, was sufficient to satisfy federal financial-responsibility requirements. Under 49 C.F.R. § 387, motor carriers must maintain "financial reserves (e.g., insurance policies or surety bonds) sufficient to satisfy liability amounts set forth in this subpart covering public liability." 49 C.F.R. § 387.5. It is undisputed that the amount of insurance maintained

by Contrux exceeded federal requirements, and that Contrux, at all times during its operations, was considered financially responsible by the relevant federal agency, the Interstate Commerce Commission.

■ The District Court rejected this argument. Undercapitalization is undercapitalization, it reasoned, regardless of insurance. The Court said:

> The federal regulation does not speak to what constitutes a properly capitalized motor carrier company. Rather, the regulation speaks to what constitutes an appropriate level of *financial responsibility*.

*Konrad Radaszewski v. Contrux, Inc.*, No. 88–0445–CV–W–1 (W.D.Mo. Oct. 26, 1990), slip op. 7 n. 6 (emphasis in original). This distinction escapes us. The whole purpose of asking whether a subsidiary is "properly capitalized," is precisely to determine its "financial responsibility." If the subsidiary is financially responsible, whether by means of insurance or otherwise, the policy behind the second part of the *Collet* test is met. Insurance meets this policy just as well, perhaps even better, than a healthy balance sheet.

At the oral argument, counsel for Radaszewski described the insurance company in question as "fly-by-night." He pointed out, and this is in the record, that the insurance agency that placed the coverage, Dixie Insurance Agency, Inc., was, like Contrux, a wholly owned subsidiary of Telecom. (Apparently the $1,000,000 primary policy is still in force. It is only the $10,000,000 excess policy that is inoperative on account of the insolvency of the excess carrier, Integrity Insurance Co.) Plaintiff argues that if the case went to trial he could show that the excess carrier "was an insurance company with wobbly knees for years before its receivership." Reply Brief of Appellant 9. He also says that the excess carrier was not strong enough even to receive a minimum rating in the Best Insurance Guide. Finally, plaintiff suggests that Contrux bought "its insurance from a financially unsound company which most certainly charged a significantly lower premium." Reply Brief of Appellant 10.

At this point it is appropriate to note the proper standard to apply in assessing factual claims in the present procedural status of this case. The District Court dismissed the complaint under Fed.R.Civ.P. 12(b)(2) for want of jurisdiction over the person of Telecom. In doing so, however, it did not rely solely on the pleadings. It had before it and relied also on other material, including affidavits and depositions. We have, therefore, in substance, what amounts to a motion for summary judgment on the issue of jurisdiction over the person. The question before the District Court, and before us on appeal, is simply whether Radaszewski has raised any genuine issue of fact material to the question of personal jurisdiction over Telecom. If he has not, there is no point in a trial, and if the case went to trial, with no more evidence than we presently have before us, the issue of personal jurisdiction over Telecom would never get to the jury: Telecom would be entitled to a directed verdict, on the ground that no rational trier of fact could find personal jurisdiction over it. Jurisdiction, to be sure, is a "question of law," in an abstract sense, but it often, as here, turns on questions of fact. What degree of control did Telecom exercise over Contrux? Was Contrux undercapitalized? Did Telecom's conduct with respect to Contrux proximately cause any injury to the plaintiff? Thus, as with every other question of fact, a court, when faced with a pre-trial motion for judgment as a matter of law, must ask itself whether there is any genuine issue. If there is not, the motion should be granted. If there is, the case should go forward and be tried. Both parties cite authorities to the effect that, before trial, a plaintiff need show only a "prima facie case" on jurisdiction. This somewhat confusing formulation means, we think, only that a complaint should not be dismissed for want of jurisdiction, before trial, if there is any genuine issue as to any fact material to the jurisdictional question.

Thus, in *Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d 1211, 1215 (8th Cir.1977), we said:

While the facts adduced in a Rule 12(b)(2) Motion to Dismiss for lack of personal jurisdiction must be viewed in the light most favorable to the party opposing the motion, there must nonetheless be some evidence upon which a prima facie showing of jurisdiction may be found to exist, thereby casting the burden upon the moving party to demonstrate a lack of personal jurisdiction.

This is the same standard as the one we apply on motions for summary judgment under Rule 56. We look at the facts in the light most favorable to the party opposing the motion, give him the benefit of all reasonable inferences, and grant the motion only if there is no genuine issue as to any material fact, so that the moving party is entitled to judgment as a matter of law. So here, though the motion is captioned under Rule 12(b)(2) rather than under Rule 56, the analytical process is the same as that used on a motion for summary judgment. We look at the facts relevant to the issue of jurisdiction in the light most favorable to Radaszewski, give him the benefit of all reasonable inferences from these facts, and deny the motion to dismiss if the record, viewed in this way, raises any genuine issue of fact material to the issue of jurisdiction.

We are convinced that this record raises no such issue. Insurance is unquestionably relevant on the issue of "undercapitalization." The existence of insurance goes directly to the question of the subsidiary's financial responsibility. If a parent has established a financially responsible subsidiary, then that subsidiary is not "undercapitalized" in the only sense that matters for present purposes. That subsidiary, in other words, is not unable to meet its obligations. It therefore cannot have been established by the parent, either deliberately or recklessly, in an effort to avoid obligations or to make them difficult to collect. The improper-conduct or motivation portion of the *Collet* test cannot be met. Here, it is beyond dispute that Contrux had insurance, and that it was considered financially responsible under the applicable federal regulations. We see nothing sinister in the fact that the insurance was purchased through an agency wholly owned by Telecom. This is a common business practice. The assertion that a reduced premium was paid is wholly without support in the record. It is based on speculation only. There is no evidence that Telecom or Contrux knew that the insurance company was going to become insolvent, and no reason, indeed, that we can think of why anyone would want to buy insurance from a company that he thought would become insolvent.

The dissent, *post* at 312–313, raises certain specific questions about the adequacy of the insurance coverage purchased by Contrux. In our view, a careful reading of the record does not bear out the contentions made. In the first place, Contrux unquestionably had good basic coverage of $1,000,000 from the Insurance Company of the State of Pennsylvania, an insurer whose solvency is not questioned. III Joint App. 756. For this coverage Contrux apparently paid a premium of $17,000. *Id.* at 763. No suggestion is made that this premium was not adequate. It is true that the excess carrier, Integrity Insurance Co. (not Integral), did not receive a Best's rating in 1985 and 1986. The relevance of this information is dubious at best. Importantly, the information was not available to Contrux when it purchased insurance from Integrity in 1983, or when it renewed the insurance in 1984. There is no evidence in the record as to whether a Best's rating was given in the 1984 publication. The accident in question happened in 1984. Events occurring thereafter are of tenuous relevance to Contrux's state of mind at the time of the purchase of the insurance. Recall that under *Collet* some evidence of improper motive is required to satisfy one of the elements necessary for piercing the corporate veil.

The dissent argues that Telecom, or Contrux, paid only a $4,000 premium for the entire coverage of $11,000,000. This overlooks the fact, recounted above, that a separate and far more substantial premium was paid for the $1,000,000 in basic coverage. As we read the available information, Contrux paid a premium of $4,900 for $10,-

000,000 in excess coverage for the year beginning March 1, 1983. III Joint App. 754. For the next year, the year in which the accident occurred, the same coverage cost $5,480. *Id.* at 755. There is no evidence in this record, by way of opinion testimony or otherwise, that these premiums are below the market level. It is true that Integrity incurred operating losses in 1983 and 1984, see III Joint App. 653, but the same page of the record reveals that Integrity's financial position improved markedly in the year 1984. Its surplus funds at the close of 1983 were $25,374,-000. At the end of 1984, these funds reached $40,526,000. *Ibid.* Accordingly, we see no basis whatever for suspecting that Integrity was insolvent at the time the insurance was purchased. The company had been in business since 1958 and was licensed in the District of Columbia and all states. As of the end of 1985, there was still a policyholders' surplus of $20,514,000. *Id.* at 655. This information, in our view, supports at most an inference that Contrux may have made an error in business judgment in placing its excess coverage with Integrity. It furnishes no genuine support for an inference of improper purpose.

The doctrine of limited liability is intended precisely to protect a parent corporation whose subsidiary goes broke. That is the whole purpose of the doctrine, and those who have the right to decide such questions, that is, legislatures, believe that the doctrine, on the whole, is socially reasonable and useful. We think that the doctrine would largely be destroyed if a parent corporation could be held liable simply on the basis of errors in business judgment. Something more than that should be shown, and *Collet* requires something more than that. In our view, this record is devoid of facts to show that "something more."

### III.

We hold that plaintiff has made no showing of any genuine issue of material fact with respect to the dishonesty or improper-conduct element of the *Collet* test. In this respect, we disagree with the District Court. We agree, however, with the result reached by that Court. The complaint against Telecom must be dismissed for want of jurisdiction. Additionally, the dismissal should be with prejudice. Under the District Court's rationale, lack of a showing of proximate cause, the defect in personal jurisdiction could be cured later, if Radaszewski obtained a judgment against Contrux. Thus, it was consistent for that Court to dismiss the complaint without prejudice. Failure to meet the improper-conduct element of *Collet*, however, is not curable. It does not depend on future events. Plaintiff has had a fair chance to show this element, and he has not succeeded. We therefore affirm the judgment of the District Court dismissing the complaint for want of jurisdiction, but modify that judgment to provide that it is with prejudice as to Radaszewski's complaint against Telecom.

HEANEY, Senior Circuit Judge, dissenting.

I respectfully dissent. The record is more than sufficient to support a prima facie showing that personal jurisdiction over Telecom exists.

Contrux is a wholly owned subsidiary of Telecom. It was organized as a nonunion subsidiary to take advantage of the lower wage and benefit package that such status would permit. It was initially capitalized for only $25,000, even though it was to operate as a nationwide motor carrier with equipment valued at $1,000,000 or more. Tractors and trailers were purchased for Contrux by Telecom. Telecom assumed ultimate responsibility for the payment of the purchase price. Moreover, Telecom periodically advanced money to Contrux for operating expenses or guaranteed payment for such expenses, taking as security for its advances a mortgage on all the tangible assets of Contrux. Contrux's debt to Telecom eventually totaled over $750,000, all of which was secured in 1985 by a mortgage on all of Contrux's assets, leaving little or nothing for unsecured or judgment creditors.

Contrux had a negative net worth and net operating losses each of the four years

that it was actively in business. Most important business decisions involving Contrux were made by Telecom because Contrux had neither the working capital nor the unencumbered assets to permit it to make decisions on its own. In every respect on the basis of the record now before us, Contrux was nothing but a shell corporation established by Telecom to permit it to operate as a nonunion carrier without regard to the consequences that might occur to those who did business with Contrux or those who might be affected by its actions.

Telecom does not challenge the above facts. Rather, it argued that because Contrux obtained $1,000,000 in liability insurance through Telecom, Contrux had sufficient funds to meet its obligations to tort claimants. The district judge rejected this contention, stating:

> Whether a corporation is undercapitalized is a question of fact which turns on the nature of the business of the corporation and the risks that business necessarily faces....

> Upon review of all the pleadings and evidentiary materials, the court concludes that plaintiff and Flexi–Van have made a prima facie showing that Contrux was undercapitalized from its inception. This showing has not been rebutted by Telecom's sole assertion that Contrux procured liability insurance in conformity with federal regulation. Furthermore, Telecom has never directly disputed the specific allegations of undercapitalization that have been made by plaintiff and Flexi–Van. As for showing that Contrux was undercapitalized for an improper purpose, the court finds that the evidence submitted on this issue has failed to resolve this material factual dispute. Given that a determination of a corporation's financial status is a question of fact, the court finds that the question is best left for the trier of fact to resolve.

The majority rejects the district court's analysis, reasoning that Contrux had liability insurance and thus was considered financially responsible under the applicable federal regulations. In my view, Contrux's liability insurance is a relevant factor to be considered, but a fact finder after a trial might well find that this factor alone does not require a verdict for the defendant.

There are many unanswered questions about the $10,000,000 excess coverage policy purchased from the Integral Insurance Company. First, was Integral solvent at the time the insurance was purchased. The record reveals that Integral incurred large operating losses in 1983 and 1984, that it did not receive a Best rating in 1984 because a substantial portion of its business was reinsured with reinsurers not licensed by the United States, and that it did not receive a Best rating in 1985 because it could not meet minimum standards. The record further reveals that Telecom paid only $4,000 for the $11,000,000 policy procured through its own subsidiary insurance agency. It seems to me that these facts raise an issue as to whether Integral was solvent at the time of purchase and that the issue is one to be developed at trial. Second, what did Telecom know about Integral when it made the purchase. If it knew or reasonably should have known that it was insolvent or nearly so at the time the coverage was purchased, then the insurance did little or nothing to enhance the economic viability of Contrux.

The majority asks why anyone would want to buy insurance from an insolvent company. An answer readily comes to mind. The purchase was a cheap way of complying with federal regulations and furthered the illusion to all concerned that Contrux was a viable company able to meet its responsibilities. The record does not show that the federal regulating agency determines whether an insurance company is capable of meeting the claims that may be valid against it. The regulation is apparently satisfied simply by filing proof of insurance. Surely Telecom could have determined Integral's ability to meet lawful claims if it had inquired. This issue could be fully developed at trial.

As the matter now stands, the innocent victim may have to bear most of the costs of his disabling injuries without having the opportunity to prove that Contrux was in-

tentionally undercapitalized. I believe this is wrong and inconsistent with Missouri law. I would thus remand for trial.[1]

---

1. Having reached this conclusion, I must deal with the district court's order to dismiss without prejudice because Radaszewski does not yet have a verdict against Contrux and is unable to collect his full damage. I do not believe that the district court's decision is consistent with Missouri law. In *Collet v. American Nat'l* *Stores, Inc.,* 708 S.W.2d 273 (Mo.App.1986), the court said: "It is clear when the action of the dominant corporate renders the subservient corporation insolvent, then the requisite injury and causal connection is established." *Id.* at 287. I would add that it makes little sense to have two trials when all issues can be resolved in one.