**Ronald HYLAND and Gail Hyland d/b/a G & R Transportation**

v.

**METROPOLITAN AIRPORT COMMISSION.**

No. 4–92–CV–1212.

United States District Court, D. Minnesota, Fourth Division.

March 31, 1995.

---

Ronald Joseph Riach, Franke & Riach, Roseville, MN, for plaintiffs Ronald Hyland, Gail Hyland dba G & R Transp.

Donald Wright Selzer, Jr., Jacob M. Holdreith, Oppenheimer Wolff & Donnelly, St. Paul, MN, for defendant Metropolitan Airports Com'n.

## ORDER

ROSENBAUM, District Judge.

The defendant, Metropolitan Airport Commission ("MAC"), has refused to lease ground transportation services counterspace at the Minneapolis/St. Paul International Airport terminal to the plaintiffs. MAC leases this counterspace to regularly-scheduled, fixed-route, fixed-fee commercial ground transportation services. Plaintiffs allege that MAC's refusal to lease counterspace to them violates their statutory and constitutional rights.

The matter is before the Court on defendant's motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."). The Court heard oral argument on July 14, 1994. For the reasons set forth below, defendant's motion for summary judgment is granted.

### I. *Background*

The plaintiffs are Ronald and Gail Hyland d/b/a G & R Transportation. G & R Transportation, a St. Paul, Minnesota, business, is a personal transportation service licensed by the State of Minnesota's Transportation Regulation Board ("T.R.B."), pursuant to Minn. Stat. §§ 168.1281, 221.011(34), and 221.85. G & R Transportation is also licensed by the Interstate Commerce Commission ("I.C.C.") as a common carrier over irregular routes, and as a charter service between points in Iowa, Minnesota, and Wisconsin.[1] The defendant is a Minnesota public corporation which regulates the operation of all commercial passenger transportation services at the

---

1. "Irregular route" or "charter service" is on-demand transportation service to any point of the passenger's choosing, at a time of the passenger's choosing, and typically at a negotiated rate.

Minneapolis/St. Paul International Airport ("Airport").

On November 13, 1992, plaintiffs filed this action in Hennepin County District Court. Their complaint alleges that: (1) MAC's failure to promulgate formal rules, regulations, or standards governing access to commercial ground transportation counterspace at the Airport violates Minn.Stat. § 473.608; (2) MAC's allocation of counterspace implicates fundamental constitutional rights and its failure to promulgate counterspace leasing rules has subjected plaintiffs to the arbitrary exercise of governmental powers in violation of their due process rights; (3) plaintiffs are entitled to an injunction barring MAC from interfering with the operation of their business at the Airport and granting them access to commercial ground transportation counterspace; (4) MAC has selectively enforced its rules against plaintiffs; and (5) plaintiffs have been denied equal protection of the laws because they have been treated differently from similarly-situated businesses. Plaintiffs seek injunctive relief, monetary damages, and attorney's fees and costs. On December 3, 1992, defendant removed the case to this Court, pursuant to 28 U.S.C. §§ 1441 and 1443. The Court's jurisdiction is premised upon 28 U.S.C. § 1331.

Defendant moves for summary judgment, arguing that it has no duty, under either state or federal law, to promulgate formal rules regarding Airport counterspace allocation and that its informal policy of reserving counterspace for regular-route transportation services rationally and fairly allocates limited space among competing users. Plaintiffs oppose the motion.

## II. *Analysis*

Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). *See also Hartnagel v. Norman*, 953 F.2d 394, 395–96 (8th Cir.1992). In reviewing the evidence, the court must treat the facts alleged in the plaintiff's complaint and affidavits as true and resolve all factual disputes in favor of the plaintiff. *Radaszewski v. Telecom Corp.*, 981 F.2d 305, 310 (8th Cir.1992), *cert denied*, —— U.S. ——, 113 S.Ct. 2338, 124 L.Ed.2d 248 (1993).

The Minnesota legislature has delegated to MAC broad statutory authority to improve, maintain, operate, and manage airports in a manner which will, in MAC's opinion, further the interest of aeronautics in the state of Minnesota. *See* Minn.Stat. § 473.608, subds. 6, 7, 8, 11, 13, 15, 16, 17. In particular, subdivision 15, provides that:

> [MAC] without limitation upon any other powers ... may contract with any person for the use by the person of any property and facilities under [MAC's] control, for such purposes, and to an extent as will, in the opinion of the commissioners, further the interest of aeronautics in this state....
> *Id.*

The legislature has also granted MAC power to adopt and enforce rules it deems necessary to the operation and management of the Airport. In this regard, Minn.Stat. § 473.608, subd. 17(1) provides that:

> [MAC] *may* adopt and enforce rules, regulations, and ordinances *it deems necessary* ..., including those relating to the internal operation of [MAC] and to the management and operation of airports owned or operated by it.... (Emphasis added.)

Pursuant to this statutory authority, MAC has promulgated ground transportation rules for commercial and non-commercial Airport users. These include MAC's regulation of solicitation by ground transportation operators in and around the terminal. *See* MAC Ordinance No. 76, § 3.7(b). Solicitation, within the terms of the ordinance, means "requesting, offering and urging by any means the business of carrying passengers for hire." [2] *Id.* MAC leases ground transpor-

---

**2.** It is not considered solicitation, however, if an air traveller "prearranges" personal transportation by means other than in-person solicitation, provided the arrangement is initiated by the air traveller. For instance, it is permissible for an air traveller to telephone a limousine service, taxi, or other transportation service from the airport and arrange to be picked up there.

tation counterspace to allow commercial ground transportation operators to prearrange transportation for air travellers.

MAC restricts ground transportation counterspace to those services which hold "regular-route authority." Such services have been granted authority by the T.R.B. or the I.C.C. to operate on specific routes, at fixed times, for fixed fees. *See* Minn.Stat. § 221.071 (1992); 49 U.S.C. § 10922(c)(1)(A) (1993). These regular-route carriers operate under regularly-scheduled routes and fees. 49 U.S.C. § 10922(e)(1) (1993); *Id.* § (e)(3); 49 CFR Pt. 1312; Minn.Stat. § 221.041 (1992). Regular-route authority is granted to a limited number of transportation services based on a demonstrated public need for service over a particular route. *See* 49 U.S.C. § 10922(c)(1)(A) (1993); Minn.Stat. § 221.071 (1992).

■ The plaintiffs do not possess T.R.B. or I.C.C. regular-route authority. Instead, they possess irregular-route authority. *See* Aff. of Jacob Holdreith, Exhibit 2.b. It is plaintiffs' position that the defendant is statutorily and constitutionally required to promulgate formal rules regarding the Airport's commercial ground transportation counterspace. The Court does not agree.

The language of Minn.Stat. § 473.608 is permissive as opposed to mandatory. The statute provides that the defendant "may" adopt rules "it deems necessary." *Id.* This permissive language is a legislative grant of discretion to adopt appropriate rules, regulations, and ordinances as—and if—it sees fit. Under this statute, the defendant bears no legal obligation to promulgate formal rules for the allocation of space at its transportation services counter. Clearly, under Minn.Stat. § 473.608, MAC could promulgate rules which might govern this counterspace. It has simply chosen not to do so. The Court finds this decision to be in full accord with § 473.608.

■ Even assuming that MAC was required to promulgate transportation counterspace rules, the fact that MAC has not done so does not rise to the level of a constitutional violation. The law is clear that "the mere violation of a state law or rule does not constitute a federal due process violation." *Williams v. Nix,* 1 F.3d 712, 717 (8th Cir. 1993). "State laws and regulations create a protectable [property] interest only when they (1) 'place substantive limitations on the exercise of official discretion;' and (2) contain ' "explicit mandatory language" ' comprising ' "specific directives to the decision maker that if the regulations" ' substantive predicate acts are present, a particular outcome must follow." *Id.* (internal citations omitted). Minn.Stat. § 473.608 contains no such language, nor does it place the requisite substantive restriction on MAC's discretion. Therefore, plaintiffs' constitutional claims fail for lack of a cognizable federal right.

Plaintiffs next argue that a lack of formal rules and an absence of delineated standards violate Minn.Stat. §§ 473.601 to 473.675. In this regard, plaintiffs claim that defendant's failure to promulgate formal rules inadequately protects their asserted property interest—the right to conduct business in this state. As a result, plaintiffs assert that they have been subjected to the arbitrary exercise of governmental powers in violation of their due process rights. The Court is not persuaded.

■ The Eighth Circuit Court of Appeals has ". . . yet to decide whether substantive due process provides a right to be free from arbitrary and capricious state action." *Hall v. Lombardi,* 996 F.2d 954, 958 (8th Cir.1993) (quoting *Weimer v. Amen,* 870 F.2d 1400, 1405 (8th Cir.1989)). Further, the law is clear that there is no cognizable due process right to do business in a state. *See Board of Regents v. Roth,* 408 U.S. 564, 566–67, 92 S.Ct. 2701, 2703–04, 33 L.Ed.2d 548 (1972); *Gold Cross Ambulance v. Kansas City,* 705 F.2d 1005, 1016 (8th Cir.1983); *Golden State Transit Corp. v. City of Los Angeles,* 686 F.2d 758, 760 (9th Cir.1992). With respect to the plaintiffs' procedural due process claim, the Court determines that, because the statute is permissive, no due process rights of the plaintiffs have been violated.

Next, plaintiffs argue that they have been denied equal protection of the laws because defendant's policy of providing counterspace only to carriers with regular-route authority

treats similarly-situated entities differently. Here, plaintiffs claim that because defendant allows some carriers with both regular-route and irregular or charter-route authority to operate from the counter, but denies this space to plaintiffs, their equal protection rights are violated.

■ The Fourteenth Amendment provides that "[n]o state shall ... deprive any person of life, liberty, or property, without due process of law; nor deny to any person ... the equal protection of the laws." It is axiomatic that equal protection requires that " 'all persons similarly circumstanced shall be treated alike.' " *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982), citing *F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 562, 64 L.Ed. 989 (1920). "The initial discretion to determine what is 'different' and what is 'the same' resides with [each State's legislature]." *Id.* A legislature must be permitted substantial latitude to establish classifications that "roughly approximate the nature of the problem perceived, that accommodate competing concerns both public and private, and that account for limitations on the practical ability of the State to remedy every ill." *Id.*

■ Here, too, the Court determines that plaintiffs' claims fail. Plaintiffs' bald assertion that they, as irregular-route carriers, are similarly-situated with carriers possessing regular-route authority is simply not accurate. Blithely calling a duck a dog does not make the duck man's best friend.

MAC's recognition that T.R.B. and I.C.C. licensed regular-route carriers are not the same as irregular-route carriers without similar licensure is a rational classification of different entities into separate categories. It is axiomatic that classifications that neither involve fundamental rights, nor proceed along suspect lines, are accorded a strong presumption of validity if there is "any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Communications, Inc.,* 508 U.S. ——, ——, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211 (1993). *See also Kadrmas v. Dickinson Public Schools,* 487 U.S. 450, 462, 108 S.Ct. 2481, 2489–90, 101 L.Ed.2d 399 (1988).

The defendant has explained, and the Court accepts, that the restriction of counterspace to regular-route carriers serves a number of salutary purposes. First, it recognizes that the number of regular-route carriers allowed to serve the Airport is limited, as is the total available counterspace. In contrast, there are a large number of charter services, including plaintiffs' service, which do not hold regular-route authority. These additional carriers cannot be accommodated in the existing space. Under these circumstances, defendant's regular-route/irregular-route distinction provides a rational means of allocating limited space. Second, regular-route operating authority is granted only after a hearing by the T.R.B. or I.C.C. review. These agencies determine the carrier's fitness and ability to serve the proposed route, the public need for service along the proposed route, and the fairness of the proposed fee to passengers and transportation service competitors. Regular-route authority provides MAC and the public with demonstrated assurance that the carrier serves the public interest. Lesser regulated providers, such as G & R Transportation, do not offer these demonstrated advantages.

The Court finds that the defendant's policy of providing access to counterspace to carriers with regular-route authority is rationally related to the defendant's interest in promoting the interests of air travellers, as well as commercial ground transportation carriers. This policy does not contravene equal protection. Because plaintiffs have voluntarily withdrawn their claim of selective prosecution, the Court need not consider the arguments raised therein.

Accordingly, for the reasons set forth above, and based on the files, records, and proceedings herein, IT IS ORDERED that:

Defendant's motion for summary judgment is granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.