WALKER EMPLOYMENT SERVICE, INC. v.
HARRY D. PARKHURST, JR., AND ANOTHER.

219 N. W. 2d 437.

June 21, 1974—No. 44442.

*Van Valkenburg, Comaford, Moss, Fassett, Flaherty & Clarkson* and *Paul Van Valkenburg,* for appellant.

*Fredrikson, Byron, Colborn, Bisbee, Hansen & Perlman, Jerome S. Rice,* and *S. Charles Sorenson, Jr.,* for respondents.

Heard before Otis, MacLaughlin, and Yetka, JJ., and considered and decided by the court.

YETKA, JUSTICE.

Plaintiff appeals from an order of the Hennepin County District Court, denying its motion for amended findings of fact and conclusions of law or for a new trial. We reverse.

Defendant, Harry D. Parkhurst, Jr., commenced employment as a counselor for plaintiff, Walker Employment Service, Inc., on November 1, 1959. Defendant had previously worked for the Communications Equipment Division of General Electric Company, where he had received considerable technical training. On the first or second day of defendant's employment with plaintiff, the parties executed a written employment contract which contained the following provision:

"In consideration of the foregoing employment, Harry D. Parkhurst, Jr. agrees that upon leaving the employ of Walker Employment Service, Inc., he will not engage in the business of, or accept employment by an employment agency within the County of Hennepin for a period of one (1) year after leaving the employ of Walker Employment Service, Inc. Engaging in or becoming interested in, directly or indirectly, the business of an employment agency as an individual, partner, stockholder, director, officer, employee, or in any other capacity whatsoever, shall be deemed a violation of the foregoing provision.

"This provision applies to a voluntary termination of employment and to termination of employment by Walker Employment Service, Inc. for cause regardless of the duration of employment. If termination of employment is made by Walker Employment Service, Inc. without cause, then this provision shall apply only if at that time employment has continued for a period of at least six (6) months."

The record supports the conclusion that defendant entered into his employment contract willingly and without objection and that he understood the terms of the restrictive covenant. There is also no dispute that he breached that covenant. The only

question is whether as a matter of public policy we should declare that covenant unenforceable.

Defendant received no training from plaintiff, but was immediately put to work in his new duties as "manager" of plaintiff's technical division, handling job orders and applications. During the approximately 13 years in plaintiff's employ he received no salary but was compensated on a commission basis only with certain overrides. His income increased steadily from $11,000 to a high of almost $39,500 in 1969. In the years 1970 and 1971 the employment agency business, particularly in the technical area, suffered due to a slump in the economy, resulting in an increase in job applications and a dramatic decrease in job orders. Defendant's income dropped to a low of approximately $14,000 in 1971. At this time defendant's financial needs were such that his wife was forced to obtain a job. This sharp reduction in income, along with several disagreements with Stuart Walker, president of plaintiff corporation, led defendant to terminate his employment with plaintiff on October 12, 1972, and thereafter he opened his own employment agency in Hennepin County.

On October 30, 1972, plaintiff filed suit seeking to enjoin defendant from engaging in the employment agency business contrary to the terms of the employment agreement quoted above. Plaintiff also prayed for damages incurred as the result of defendant's breach of the employment agreement.

On January 11, 1973, the trial court, sitting without a jury, found the restrictive covenant not to compete to be unenforceable under Bennett v. Storz Broadcasting Co. 270 Minn. 525, 134 N. W. 2d 892 (1965), specifically finding that defendant's age, physical condition, and abilities would make it very difficult for him to find employment at a level of income necessary to meet his needs. The court found the harm to plaintiff resulting from defendant's operation of an employment agency is outweighed by the hardship that would befall defendant by enforcement of the restrictive covenant.

Plaintiff moved for amended findings of fact and conclusions of law or a new trial. This motion was denied and plaintiff appealed. The issue raised on its appeal is whether the trial court erred in holding the restrictive covenant unenforceable. The parties agree that the injunctive portion of the relief sought is now moot so we are concerned only with plaintiff's legal right to seek damages.

A summary review of the history underlying enforcement of restrictive covenants is in order.

In The Menter Co. v. Brock, 147 Minn. 407, 180 N. W. 553, 20 A. L. R. 857 (1920), this court refused to enforce a restrictive covenant against a former employee in plaintiff's retail clothing store. In that case defendant employee managed plaintiff's retail clothing store pursuant to a written employment contract in which defendant promised not to compete with plaintiff within the city of Minneapolis for a period of 4 years after the termination of his employment with plaintiff. Defendant thereafter resigned his job and opened his own retail clothing store only two blocks from plaintiff's store. In holding the contract unenforceable, we said (147 Minn. 410, 180 N. W. 554, 20 A. L. R. 859):

"Where the services have been of such a character that the employee's name carries with it the good will of the employer's business, or where the employee has obtained knowledge of secrets in such business, the disclosure of which would result in irreparable damage to the employer, it appearing that the subsequent employment was to obtain the benefit of the secrets or there was danger that such secrets would be disclosed in the subsequent employment, injunctive relief will be granted. [Citations omitted.]

"Tested by that rule this case fails. There is no evidence that Brock, in the position of manager, came in contact with customers of plaintiff so as to obtain any personal hold upon the good will

of the business, or that he had made or threatened to make any effort to secure or attract plaintiff's patrons.

\* \* \* \* \*

"It is readily seen that courts are and should be cautious in complying with the request of an employer to enjoin a former servant who has violated a covenant of this sort from earning a livelihood. It may well be surmised that such a covenant finds its way into an employment contract not so much to protect the business as to needlessly fetter the employee, and prevent him from seeking to better his condition by securing employment with competing concerns. One who has nothing but his labor to sell, and is in urgent need of selling that, cannot well afford to raise any objection to any of the terms in the contract of employment offered him, so long as the wages are acceptable. Therefore, some proof of irreparable damage ought to be adduced in such a case before equitable relief by way of injunction will issue."

In the case of Granger v. Craven, 159 Minn. 296, 199 N. W. 10 (1924), we had to deal with a covenant not to compete which was part of a written employment contract executed by defendant, a physician, pursuant to his commencement of employment with plaintiff, also a physician who had practiced medicine for 30 years in the city of Rochester. Defendant was hired to treat ailments of the ear, nose, and throat; although there was evidence that he also performed other medical services during his employ with plaintiff. The covenant provided that defendant was not to practice medicine within a 20-mile radius of Rochester for a period of 3 years in the event he should leave plaintiff's employ. The covenant was breached.

In holding the covenant enforceable, we recognized that by virtue of defendant's employment with plaintiff he had established close relationships with many patients who would be inclined to follow defendant to his new practice, thereby injuring plaintiff's practice. We distinguished that case from the Menter case and said (159 Minn. 303, 199 N. W. 13):

"* * * [T]here was no evidence that Brock had come 'in contact with the customers of plaintiff so as to obtain any personal hold upon the good will of the business, or that he had made or threatened to make any effort to secure or attract plaintiff's patrons.' How different is this case for, as already explained, defendant had for 2 years come in intimate contact with large numbers of defendant's patients. It must be presumed that he acquired a close 'personal hold' upon many of them and in consequence a substantial portion of plaintiff's good will. It is equally clear that the only effort he need make to 'secure or attract plaintiff's patrons' in considerable number is to open an office in Rochester.

"Again, the situation in The Menter Co. v. Brock was expressly distinguished from those 'where a person is hired to work up a route or territory and serve the customers obtained therein, as, for instance, a milk or laundry route and the like. There the employe comes directly in contact with the customers. They may be attracted to him personally, and are likely to go with him should he enter the service of a competitor.' After citing leading cases to that effect, the opinion explains that in such cases the injunction is rested upon the wrongful interference with the employer's business, such interference readily appearing 'when the former employe invades the route on behalf of a new employer.' "

However, the court in Granger did not overlook the "professional" status of defendant in that case:

"It is not to be overlooked that different conditions attend professional employment from those which go with the more conventional relation of master and servant. Public policy is much more concerned with the case of 'one who has nothing but his labor to sell and is in urgent need of selling that' and who in consequence does not object much or long to the terms of any contract of employment offered him than with the case of a professional man who is the product of modern university education and

has in his training an asset which should make him independent of the dictation of others." 159 Minn. 303, 199 N. W. 13.

The court distinguished Menter on two bases: (1) The nature of defendant's employment in Granger was such that, due to his relationship with the plaintiff's patients, his name would carry the goodwill of his employer's business so that his competition would be unfair to his former employer; and (2) due to the defendant's specialized university education, training, and professional status, he would be independent of the dictation of others.

In the case of Bennett v. Storz Broadcasting Co. 270 Minn. 525, 134 N. W. 2d 892 (1965), we had a situation where the employee was a radio announcer who executed an employment contract containing a covenant not to compete in case of leaving his employer's employ. The employee was then demoted to an inferior position with a 50-percent decrease in salary. Thereafter the employee resigned and secured a job with a competitor of his former employer in violation of the covenant. We held the covenant unenforceable. We recognized the judicial policy against enforcement of a contract that limits the right of a party to earn a livelihood. We said (270 Minn. 533, 134 N. W. 2d 898):

"It is true that this court has uniformly upheld covenants in a contract of employment designed to protect the employer against the deflection of trade or customers by the employee by means of the opportunity which the employment has given him; or to protect the legitimate interest of the business or professional man about to employ another under circumstances where the employee is given access to the employer's patronage, customers, clients, or trade secrets. Where the restraint is for a just and honest purpose, for the protection of a legitimate interest of the party in whose favor it is imposed, reasonable as between the parties, and not injurious to the public, the restraint has been held valid."

The court went on to set forth the *test* to be employed to determine the enforceability of such covenants:

"* * * The test applied is whether or not the restraint is necessary for the protection of the business or good will of the employer, and if so, whether the stipulation has imposed upon the employee any greater restraint than is reasonably necessary to protect the employer's business, regard being had to the nature and character of the employment, the time for which the restriction is imposed, and the territorial extent of the locality to which the prohibition extends.

"Restrictions which are broader than necessary to protect the employer's legitimate interest are generally held to be invalid, and the determination of the necessity for the restriction is dependent upon the nature and extent of the business, the nature and extent of the service of the employee, and other pertinent conditions." 270 Minn. 534, 134 N. W. 2d 899.

In the Bennett case we held that the validity of the covenant must be determined on its own facts and a reasonable balance must be maintained between the interests of the employer and the interests of the employee.

Thus, throughout these cases there are two competing policies: One favoring the right of a person to freedom in earning a livelihood; conversely, the other recognizing the right of an employer to protect himself from unfair competition.

Enforcement of restrictive covenants against professional employees is based on the relationship that is created, as for example, between a doctor and his patients. Once this relationship is formed, it is beyond question that a doctor's patients will seek his aid regardless of this doctor's employment situation.

In the Bennett case, the employee was deliberately demoted and therefore, encouraged, or almost forced, to resign. However, the facts in the Bennett case are not present in the case at bar. In this case not only did Parkhurst have access to the clients and the secrets of his employer, but the restrictive covenant further was not unduly restrictive in that the restrictions only applied for one year after leaving employment and to Hennepin County only. There was no unreasonable restraint in the extent

of time or area, nor does the record indicate that Parkhurst was forced out or relegated to an inferior position. The facts are that Parkhurst testified that in 1963 he and two other employees were orally promised by Walker that they could buy a total of 12 percent of the business, but that this promise was rescinded due to Walker's intention to give his son the business. This occurred almost 9 years before Parkhurst left the business.

There is no indication that Parkhurst ever requested a salary. He was on a commission basis, and while the business and economics of the occupation were good, his income was constantly rising. In fact, it was rising through 1969. It was only when the economy went into a tailspin and the business of his employer dropped considerably that his own income dropped. His loss of income, therefore, was due solely to economic conditions. As a matter of fact, in the year in which Parkhurst left there was an indication his income was once again on the rise because his income for 9 months was approximately the same as that of the entire 12 months in 1971.

Nor are the facts of Menter present here. In the Menter case the employee had access only to walk-in customers from the general public. In the case at bar, plaintiff had lists of both employers and prospective employees to "match up." It had devised forms and methods of operation which Parkhurst adopted in his own business. His situation was similar to a route salesman mentioned in the Menter case. Parkhurst was no simple employee but rather a key man in the Walker operation, given not only commissions but also extra bonuses and profit sharing in years of good return. He was in a unique position to exploit the knowledge he took with him in leaving Walker's employment.

If this particular covenant which was not unreasonable either in terms of area or time, and which was utilized for the obvious reason of protecting the employer's confidential relationships with its customers, is not valid, it is difficult to see what type of covenant could ever be upheld by this court. Therefore, since the evidence is sufficient to establish defendant's breach of the

covenant, we reverse and remand for findings thereon in accordance with this opinion and for a new trial at which plaintiff may prove the damages it suffered as a result of such breach.

Reversed and remanded.