IDS LIFE INSURANCE COMPANY and American Express Financial Advisors Inc., Plaintiffs–Appellees, Cross–Appellants,

v.

SunAMERICA LIFE INSURANCE COMPANY, Defendant–Appellant,

and

SunAmerica Inc., Defendant, Cross–Appellee,

and

Royal Alliance Associates, Inc. and SunAmerica Securities, Inc., Defendants.

Nos. 97–1103, 97–1203 and 97–1240.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 11, 1997.

Decided Feb. 10, 1998.

Gary M. Elden, Eric D. Brandfonbrener (argued), Patrick T. Nash, Grippo & Elden, Chicago, IL, for IDS Life Insurance Company in No. 97–1103.

Gary M. Elden, Eric D. Brandfonbrener (argued), Margaret E. Rice, Grippo & Elden, Chicago, IL, for American Express Financial Advisors, Incorporated in Nos. 97–1103, 97–1240, and IDS Life Insurance Company in No. 97-1240.

Gary M. Elden, Eric D. Brandfonbrener (argued), Margaret E. Rice, Patrick T. Nash, Grippo & Elden, Chicago, IL, for IDS Life Insurance Company, American Express Financial Advisors, Incorporated in No. 97–1203.

Ronald P. Kane, Chicago, IL, Michele Odorizzi (argued), Mayer, Brown & Platt, Chicago, IL, Thomas M. Campbell, Pace Klein, Smith, Campbell & Paduano, New York City, Steven P. Gomberg, Gomberg, Kane & Fischer, Chicago, IL, for SunAmerica Life Insurance Company in No. 97–1103.

Michele Odorizzi (argued), Mayer, Brown & Platt, Chicago, IL, Pace Klein, Smith, Campbell & Paduano, New York City, Steven P. Gomberg, Gomberg, Kane & Fischer, Chicago, IL, for SunAmerica, Incorporated in No. 97–1203.

Michele Odorizzi (argued), Mayer, Brown & Platt, Chicago, IL, Thomas M. Campbell, Pace Klein, Smith, Campbell & Paduano, New York City, Steven P. Gomberg, Gomberg, Kane & Fischer, Chicago, IL, for SunAmerica, Incorporated in No. 97–1240.

Before POSNER, Chief Judge, and EASTERBROOK and RIPPLE, Circuit Judges.

POSNER, Chief Judge.

These appeals, which present issues relating to personal jurisdiction, arbitration, and the grant of preliminary relief, arise out of a complex multiparty litigation begun in 1995 by two subsidiaries of American Express. One of them, American Express Financial Advisors Inc., is a securities broker. The other, IDS Life Insurance Company, is an insurance company that sells annuity contracts as well as life and disability insurance policies. Both companies are members of the National Association of Securities Dealers and share a nationwide sales force of some 8,000 sales agents. These agents are independent contractors who agree that for a year following the termination of their contracts they will not do business with any "Client [whom] you [the agent] contacted, dealt with or learned about while you represented" either plaintiff in the sales territory to which the agent was assigned.

The suit charges that SunAmerica Inc. and three of its subsidiaries violated federal and state law by luring sales agents away from the plaintiffs. Among other things the defendants are alleged to have induced agents to violate their covenants not to compete by assuring them that the covenants are unenforceable. This inducement is claimed to constitute the tort of intentional interference with contract under the common law of Minnesota, which the parties agree governs this claim.

After filing their complaint, the plaintiffs moved for a preliminary injunction. The defendants countered with a request for a stay of proceedings to permit their dispute with the plaintiffs to be arbitrated. The judge granted the stay with respect to the plaintiffs' dispute with two of SunAmerica's subsidiaries, Royal Alliance Associates and SunAmerica Securities, because they, like IDS Life Insurance Company and American Express Financial Advisors, are members of the NASD and the rules of that association provide for the arbitration of disputes of this character between members. The third sub-

sidiary, SunAmerica Life Insurance Company, while a competitor of IDS Life Insurance Company, is not a member of the NASD. Nor is SunAmerica Inc. (the parent). So the judge denied the stay with respect to the dispute between the plaintiffs and these two defendants. We affirmed both parts of the judge's order. 103 F.3d 524 (7th Cir.1996).

A few weeks later, on January 2, 1997, the judge dismissed the parent corporation for lack of personal jurisdiction but granted the plaintiffs' motion for a preliminary injunction against the three other defendants. 958 F.Supp. 1258 (N.D.Ill.1997). The injunction contains prohibitions against "inducing, assisting and/or encouraging plaintiffs' agents and former agents to engage in unlawful insurance practices," "falsely representing to plaintiffs' agents and former agents that the agents' Contracts with plaintiffs are unenforceable," and "encouraging or inducing plaintiffs' agents and former agents to misappropriate plaintiffs' trade secret materials." *Id.* at 1285.

The three enjoined defendants appealed. The plaintiffs cross-appealed from the dismissal of the parent. Meanwhile the arbitration against the two defendants that are members of the NASD had begun. The plaintiffs asked the arbitration panel to adopt the district court's preliminary injunction as the panel's own. The panel refused, announcing on April 9 that it "sees no basis at this interim point for an expression of concurrence with the injunction." On the basis of this ruling, the two defendants involved in the arbitration asked us to dissolve the preliminary injunction. We did this in June, in an unpublished order bottomed on *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Salvano,* 999 F.2d 211, 215–16 (7th Cir.1993), which holds that when a case in which a preliminary injunction is issued is referred to arbitration, the injunction must be dissolved as soon as the arbitrator has an opportunity to decide whether to grant preliminary relief. See also *Performance Unlimited, Inc. v. Questar Publishers, Inc.,* 52 F.3d 1373, 1386 (6th Cir.1995); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dutton,* 844 F.2d 726, 728 (10th Cir.1988). In other words, the entire case is shifted from the judge to the

arbitrator in order to keep the two adjudicators from stepping on each other's toes. We recognized that the arbitration panel's statement about preliminary relief was ambiguous, but pointed out that the parties could seek clarification from the panel—which they then did, and the panel elaborated its grounds, saying: "This panel affirms its belief that the claimant [by which it means the two defendants in the court action] should not engage in any unlawful insurance practices, should not make false representations to agents or former agents with respect to the enforceability of respondents' [the plaintiffs'] contracts, [etc., paraphrasing the preliminary injunction].... To ask this panel, however, to enter a formal act of injunction based on the evidence in the record so far would be to anticipate and pre-judge the outcome of the underlying issues under arbitration here. Therefore, based on the arguments we have heard from both sides, the motion is denied."

Before us today are the plaintiffs' appeal from the dismissal of SunAmerica Inc. for lack of personal jurisdiction and the appeal of SunAmerica Life Insurance Company from the grant of the preliminary injunction. The appeal of the other two defendants was rendered moot by our order of last June dissolving the injunction as to them.

■ The plaintiffs could obtain jurisdiction over SunAmerica Inc., a nonresident, under Illinois' long-arm statute if SunAmerica either committed in Illinois the tort that is the basis of their suit or did business in Illinois on a regular basis. 735 ILCS 5/2–209(a)(2), (b)(4). There is no merit to the plaintiffs' argument that SunAmerica waived its defense to personal jurisdiction by participating in the litigation on the merits, *Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, 1297 (7th Cir.1993), since it did so at the direction of the district judge after having raised the defense in a timely fashion. 958 F.Supp. at 1271.

■ Although the complaint does not allege that SunAmerica itself committed any of the tortious acts that are charged, the plaintiffs argue that all they need allege is that SunAmerica controlled, directed, and supervised the three subsidiaries that actually did the acts. The complaint does not allege these things either, however, and even if it did this would not establish jurisdiction over SunAmerica. Parents of wholly owned subsidiaries necessarily control, direct, and supervise the subsidiaries to some extent, but unless there is a basis for piercing the corporate veil and thus attributing the subsidiaries' torts to the parent, the parent is not liable for those torts, *Hystro Products, Inc. v. MNP Corp.*, 18 F.3d 1384, 1388–92 (7th Cir.1994) (Illinois law); *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456–61 (2d Cir.1995); *Radaszewski v. Telecom Corp.*, 981 F.2d 305, 306 (8th Cir.1992), and cannot be served under the tort provision of the long-arm statute. *Id.* at 306–07; *Professional Group Travel, Ltd. v. Professional Seminar Consultants, Inc.*, 136 Ill.App.3d 1084, 91 Ill.Dec. 656, 483 N.E.2d 1291 (1985); *United Electrical, Radio & Machine Workers v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1091 (1st Cir. 1992).

As for the statute's "doing business" provision, SunAmerica has no office, owns no property, and makes no sales in Illinois. It advertises its subsidiaries' products and services in national media that are broadcast or otherwise disseminated in Illinois, and it borrows money from a Chicago bank and has some security interests in Illinois property, but if these relations between SunAmerica and Illinois are sufficient to bring the company within the jurisdiction of the Illinois courts, then virtually every large company is within that jurisdiction. One way of thinking about the concept of "doing business," as it is understood in cases interpreting long-arm statutes and the due process limitations on the reach of those statutes—an alternative to or refinement of the more common "quid pro quo" rationale, on which see, e.g., *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473–74, 105 S.Ct. 2174, 2182–83, 85 L.Ed.2d 528 (1985); *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir.1997); *Cote v. Wadel*, 796 F.2d 981, 984 (7th Cir.1986); *Minnesota Mining & Mfg. Co. v. Nippon Carbide Industries Co.*, 63 F.3d 694, 697 (8th Cir. 1995)—is that it picks out those nonresident businesses that are so like resident businesses, insofar as the benefits they derive

from state services are concerned, that it would give them an undeserved competitive advantage if they could escape having to defend their actions in the local courts. The three defendant subsidiaries fit the concept. But SunAmerica does not. A firm that has no offices or sales in Illinois is not much like a resident firm and so is not within the reach of the statute. See, e.g., *Rokeby–Johnson v. Derek Bryant Insurance Brokers, Ltd.*, 230 Ill.App.3d 308, 171 Ill.Dec. 670, 594 N.E.2d 1190, 1197–98 (1992); *Huck v. Northern Indiana Public Service Co.*, 117 Ill.App.3d 837, 73 Ill.Dec. 230, 453 N.E.2d 1365 (1983); *Colnar v. Baldknobbers, Inc.*, 107 Ill.App.3d 234, 63 Ill.Dec. 69, 437 N.E.2d 718 (1982).

If the subsidiaries were acting as SunAmerica's Illinois agent in the sense of conducting SunAmerica's business rather than their own business, the parent could be sued. E.g., *Maunder v. DeHavilland Aircraft of Canada, Ltd.*, 102 Ill.2d 342, 80 Ill.Dec. 765, 466 N.E.2d 217 (1984); *People v. Parsons Co.*, 122 Ill.App.3d 590, 78 Ill.Dec. 74, 461 N.E.2d 658, 666 (1984); 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1069, pp. 363–70 (2d ed.1987). A concurring opinion in *Maunder* assimilates the issue to that of piercing the veil, see 80 Ill.Dec. at 771–72, 466 N.E.2d at 223–24, but a broader principle may be involved—that a corporation should not be able to insulate itself from the jurisdiction of the states in which it does business by the simple expedient of separately incorporating its sales force and other operations in each state. That, however, is different from a case, which happens to be this case, in which the subsidiaries conduct their own businesses and jurisdiction is sought over the parent simply because it is—the parent.

Against all this the plaintiffs mainly argue that they were stonewalled in their efforts to learn more about SunAmerica's activities in Illinois through pretrial discovery. They asked the defendants to identify someone knowledgeable about the matter to be deposed. Fed.R.Civ.P. 30(b)(6). The defendants, logically enough, named SunAmerica's general counsel, who proved unable to answer the detailed questions put to her by the plaintiffs' counsel, such as whether SunAmer-

ica had ever "engaged in any purchases or sales of reverse repos with any entities that are based in Chicago." It is no surprise that the company's chief lawyer was unable to answer financial questions of a kind so picayune in relation to the full range of SunAmerica's business and therefore of her responsibilities. The defendants' decision to proceed under Rule 30(b)(6) in order to obtain the information was a mistake, as it was unlikely that any one person could have answered all the questions. The plaintiffs should have served interrogatories asking for the details of the relations between SunAmerica and Illinois; with that information in hand they could have deposed knowledgeable individuals on particular points. They did serve one set of interrogatories relating to personal jurisdiction, but failed to ask the detailed questions that they put to the general counsel at her deposition. And they failed to complain about her unresponsiveness until more than nine months after the deposition. They dropped the discovery ball. The district judge wasn't required to pick it up for them; nor we.

Let us move on to the question whether it was proper for the district judge to grant a preliminary injunction against SunAmerica Life Insurance Company. SunAmerica Life argues that the grant of the injunction improperly interfered with the arbitration, that there is no evidence of its complicity in the unlawful activities of its two sister companies that are no longer before the district court, that anyway those activities were lawful—or at least so the arbitrators are likely to conclude, based on the record of what other arbitrators have done with similar contracts—and that the injunction is vaguely worded.

■ The first two arguments are in considerable tension. To persuade us that we would be stepping on the arbitrators' toes if we upheld the grant of the injunction, SunAmerica Life stresses that all three of the defendant subsidiaries are in the same boat, accused of having committed the allegedly unlawful activities in concert. But to persuade us that it itself is not guilty of any of those activities, it stresses the differences between its role and that of its codefendants.

The first argument is a clear loser even if the premise, that all three subsidiaries are in the same boat, is accepted. Of course, as we said in *Salvano*, if a case is properly referred to arbitration, the court must back away and let the arbitrators do their work without interference. But if parallel cases are pending before different tribunals, one judicial and the other arbitral, the coordination of the cases is governed by the ordinary principles of abstention, not here invoked, rather than by some special doctrine of deference to arbitrators. See *IDS Life Ins. Co. v. SunAmerica, Inc., supra,* 103 F.3d at 529, and cases cited there. As the plaintiffs did not agree to arbitrate any dispute they might have with SunAmerica Life, they cannot be forced to give up their judicial remedies, including the right to preliminary relief in an appropriate case, merely because they have an arbitrable dispute with affiliates of the defendant. Cf. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943, 115 S.Ct. 1920, 1923–24, 131 L.Ed.2d 985 (1995); *Nielsen v. Piper, Jaffray & Hopwood, Inc.,* 66 F.3d 145, 148–49 (7th Cir.1995); *McCarthy v. Azure,* 22 F.3d 351, 354–55 (1st Cir.1994). The fact that the arbitrators might be influenced by the judicial decision in the parallel case is no more (and perhaps less, as we are about to see) untoward a consequence of the parallelism than the fact that the court might be influenced by the arbitrators' decision.

■ The second argument, in which SunAmerica Life seeks to climb out of its codefendants' boat, is based almost entirely on some unguarded language by the district judge when after issuing the injunction he turned down SunAmerica Life's request to be taken out of it. In particular he said that "if they [by which he meant SunAmerica Life] are not really involved, it won't make any difference." Read literally, as unprepared oral comments should not be, this would mean that a plaintiff could seek a preliminary injunction on the ground that since the defendant had committed no wrong, the injunction would not hurt it. It is highly unlikely that the judge meant his words to be taken in this way. For in his opinion granting the injunction he had treated the defendants as a lump, consistent with SunAmerica Life's first argument in this court against the injunc-

tion—and consistent with the evidence. Verified complaints, the equivalent of affidavits, that the defendants did not answer and so that stand uncontroverted establish that SunAmerica Life had indeed participated in the unlawful activities alleged. The judge did not retract, though he may momentarily have forgotten, his opinion and the evidence on which it was based when he turned down the motion to exclude SunAmerica Life from the injunction. Had he *granted* the motion, *that* would have been the abuse of discretion, given the state of the record and the absence of any rational basis for giving SunAmerica Life a break. It may not have been the most culpable defendant, but it was, according to the uncontradicted evidence, thoroughly complicit in its affiliates' violations.

■ Critical to the injunction was the judge's determination that under Minnesota law the contracts with which the defendants are alleged to have interfered will probably be found to be enforceable when the case is tried. SunAmerica Life argues that because the sales agents were independent contractors, the plaintiffs acquired a legally protectable interest in their client contacts only if the plaintiffs invested heavily in training the agents, an issue on which the record is vague. It is true that Minnesota, like other states, will not enforce a covenant in an employment contract not to compete with the employer after termination of the employment unless the covenant is shown to be reasonable, which means tailored in duration and scope to the lawful interest sought to be protected by it. See *Walker Employment Service, Inc. v. Parkhurst,* 300 Minn. 264, 219 N.W.2d 437, 441 (1974); *Bennett v. Storz Broadcasting Co.,* 270 Minn. 525, 134 N.W.2d 892, 898–99 (1965); *Dean Van Horn Consulting Associates, Inc. v. Wold,* 367 N.W.2d 556, 560 (Minn.App.1985); *Advent Electronics, Inc. v. Buckman,* 112 F.3d 267, 274 (7th Cir.1997); *Curtis 1000, Inc. v. Suess,* 24 F.3d 941, 944 (7th Cir.1994). We are given no reason to suppose that the standard would be different if the "employee" were actually an independent contractor. See *In re Hallahan,* 936 F.2d 1496, 1501 (7th Cir.1991). So, if the covenant here had been for 10 years, the plaintiffs might have had to show that it

takes them 10 years to recover their investment in training the agents, and the size of that investment would be material to that showing. Cf. *Davies & Davies Agency, Inc. v. Davies*, 298 N.W.2d 127, 131–32 (Minn. 1980). But a covenant of only one year—and one that barred contacts with actual clients rather than excluding the covenanter from an entire line of business—requires little proof of justification and indeed could be thought presumptively reasonable, cf. *Walker Employment Service, Inc. v. Parkhurst, supra*, 219 N.W.2d at 442, for it is certainly routine. There is no basis for upsetting the judge's determination that sufficient justification was shown for this limitation on the agents' right to go to work for a competitor of the plaintiffs.

■ SunAmerica Life argues that whatever the law of Minnesota may be, arbitrators in the securities industry are hostile to covenants not to compete. In support it has given us a sheaf of arbitrators' decisions in "raiding" cases. This argument is no good for three closely related reasons. The first is that it rests on a premise that we have already shown to be mistaken—that the courts in this parallel proceeding should defer to the decision of the arbitration panel in the proceeding against SunAmerica Life's affiliates. Second, arbitrators' decisions are not intended to have precedential effect even in arbitration (unless given that effect by contract), let alone in the courts. *Peoples Security Life Ins. Co. v. Monumental Life Ins. Co.*, 991 F.2d 141, 147 (4th Cir.1993); *Hotel Ass'n of Washington, D.C., Inc. v. Hotel & Restaurant Employees Union*, 963 F.2d 388 (D.C.Cir.1992); *El Dorado Technical Services, Inc. v. Union General De Trabajadores de Puerto Rico*, 961 F.2d 317, 321 (1st Cir.1992); *Smith v. Kerrville Bus Co.*, 709 F.2d 914, 918 n. 2 (5th Cir.1983); cf. *Brotherhood of Maintenance of Way Employees v. Burlington Northern R.R.*, 24 F.3d 937 (7th Cir.1994). And third, judges follow the law, in this case the law of Minnesota, or if they do not their decisions are corrected on appeal, while arbitrators, who often (and we assume here, given their misunderstanding of the nature of preliminary relief, which they seem to think inherently "prejudgmental" and hence never proper) are not lawyers and cannot be compelled to follow the law and their errors cannot be corrected on appeal (there are no appeals in arbitration), although there are some limitations on the power of arbitrators to flout the law. *First Options of Chicago, Inc. v. Kaplan, supra*, 514 U.S. at 942, 115 S.Ct. at 1923; *Flexible Mfg. Systems Pty. Ltd. v. Super Products Corp.*, 86 F.3d 96, 100 (7th Cir.1996); *Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 706 (7th Cir.1994); *Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 149–50 (4th Cir.1994); 4 Ian R. Macneil, Richard E. Speidel & Thomas J. Stipanowich, *Federal Arbitration Law* § 40.7.1, pp. 40:26–28 (1996 Supp.). Their decisions, which in the case of commercial as distinct from labor arbitration are rarely even accompanied by an opinion, are more like jury verdicts than like the decisions of courts, and jury verdicts are not given any weight as precedents.

■ But SunAmerica Life is right to object to the provision of the injunction that enjoins it from inducing, etc. the plaintiffs' sales agents and former sales agents to engage in "unlawful insurance practices." The practices are not specified but at argument we were told that the reference is to "twisting," the insurance counterpart of loan "flipping," on which see *Emery v. American General Finance, Inc.*, 71 F.3d 1343 (7th Cir. 1995). Injunctions must be both specific and self-contained, Fed.R.Civ.P. 65(d); *International Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 73–74, 88 S.Ct. 201, 206–07, 19 L.Ed.2d 236 (1967); *United States v. Dinwiddie*, 76 F.3d 913, 928 n. 12 (8th Cir.1996), and so this part of the injunction must be vacated with directions to the district judge to reformulate it. *Schmidt v. Lessard*, 414 U.S. 473, 477, 94 S.Ct. 713, 715–16, 38 L.Ed.2d 661 (1974) (per curiam). In all other respects the judgment of the district court is affirmed.

AFFIRMED IN PART, VACATED IN PART.