**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Plaintiff,**

v.

**Trevor B. RAHN and Jacqueline Benderski, Defendants.**

**No. 99 Civ. 10803(RMB).**

United States District Court, S.D. New York.

Nov. 2, 1999.

William T. Marshall, Jr., Sullivan & Marshall, New York City, Christopher C. Coss, Eric J. Schreiner, Rubin & Associates, P.C., Paoli, PA, for plaintiff.

Marc Wenger, Steven Hurd, Jackson, Lewis, Schnitzler & Krupman, New York City, for defendant.

## ORDER

BERMAN, District Judge.

### I. *Background*

On October 26, 1999, Merrill Lynch, Pierce, Fenner & Smith Inc. ("Plaintiff" or "Merrill Lynch") filed this action seeking (temporary) injunctive relief against Trevor B. Rahn and Jacqueline Benderski (together, "Defendants") for (i) breach of contract; (ii) conversion of trade secrets, customer lists, and confidential business information; (iii) breach of duty of loyalty; and (iv) unfair competition.

On the same day, October 26, 1999, United States District Judge Milton Pollack, sitting as the Part I judge, signed a Temporary Restraining Order ("TRO"). The TRO provided, among other things, that "Defendants shall show cause ... on the 1st day of November, 1999 at 10:30 a.m., or as soon thereafter as counsel may be heard, why a Preliminary Injunction should not be ordered according to the terms and conditions set forth above." (TRO at 3). A copy of the TRO is attached hereto as Exhibit A and incorporated into the record of these proceedings.

### II. *Discussion*

Based upon the parties' written submissions, as well as oral argument on November 1, 1999, the Court has determined that a preliminary injunction is appropriate. The preliminary injunction shall contain substantially (but not entirely) the same terms and conditions as the TRO. This injunction, an "extraordinary" remedy, is intended only as an interim measure pending the expedited determination of the merits of this case through securities industry arbitration pursuant to Rule 10335 of the National Association of Securities Dealers Code of Arbitration Procedure.

#### A. Facts

Briefly stated, the relevant facts include the following:

(i) Defendant Rahn was employed as a registered representative with Merrill Lynch in its Grand Central Financial Complex in New York City until October 22, 1999. (*See* Rahn Affidavit at ¶ 3). Defendant Benderski was employed as a sales assistant with Merrill Lynch in its Grand Central Financial Complex in New York City until October 22, 1999. (*See* Benderski Affidavit at ¶ 3);

(ii) Defendant Rahn executed Merrill Lynch's "Financial Consultant Agreement" which, among other things, pro-

vided for the confidentiality of Merrill Lynch records and prohibited Defendant Rahn from communicating to third parties the contents of any records belonging to Merrill Lynch and from soliciting customers he serviced at Merrill Lynch and that reside more than one hundred miles (100) miles from the Merrill Lynch Grand Central Financial Complex for one year following termination of his employment with Merrill Lynch. (*See* Merrill Lynch Complaint, Exhibit A). Defendant Rahn agreed that:

> All records of Merrill Lynch, including the names and addresses of its clients are and shall remain the property of Merrill Lynch at all times during my employment with Merrill Lynch and after termination of my employment for any reason with Merrill Lynch. None of such records, nor any part of them is to be removed by me from the premises of Merrill Lynch either in original form or in computerized, duplicated, or copied form except with the permission of an office manager . . .

Defendant Rahn also expressly agreed in paragraph 3 of the "Financial Consultant Agreement" **"to the issuance of a temporary restraining order or a preliminary or permanent injunction to prohibit the breach of any provision of this contract or to maintain the status quo pending the outcome of any arbitration proceeding which may be initiated."** (emphasis added);

(iii) Defendant Benderski did not execute the "Financial Consultant Agreement";

(iv) both Defendants executed Merrill Lynch's "Compliance Outline for Private Client Financial Consultants" and "Guidelines for Business Conduct." (*See* Merrill Lynch Complaint, Exhibits B and C);

(v) Defendant Benderski executed Merrill Lynch's "Conflict of Interest" agreement. (*See* Merrill Lynch Complaint, Exhibit D);

(vi) Defendants resigned from their employment at Merrill Lynch on Octo-ber 22, 1999, to work for one of Plaintiff's competitors, Morgan Stanley Dean Witter ("Dean Witter"), at its Beverly Hills, California branch office (*See* Rahn Affidavit at ¶ 3) (Benderski Affidavit at ¶ 3);

(vii) at oral argument, counsel for Merrill Lynch stated that while employed at Merrill Lynch, Defendants, between them, had approximately 175–200 clients;

(viii) at oral argument, counsel for Merrill Lynch stated that a significant number of these clients had large accounts with Merrill Lynch (i.e., in excess of $500,000);

(ix) in their affidavits, both Defendants concede that they removed documents from Merrill Lynch. Defendant Rahn states that "I removed the documents because when brokers came to Merrill Lynch they brought similar documents with them. I did not understand that any information contained in the documents was confidential or that I was not entitled to it." (Rahn Affidavit at ¶ 14). Defendant Benderski makes the identical statement in paragraph 14 of her affidavit. (*See* Benderski Affidavit at ¶ 14);

(x) in its written submissions and at oral argument, Merrill Lynch contends that Defendants have solicited some or all of the clients that they serviced while employed at Merrill Lynch in violation of the various agreements discussed above. This contention is supported by the affidavit of Nancy A. Romanzo, Administrative Manager of the Merrill Lynch Grand Central Financial Complex. In her capacity as Administrative Manager, Ms. Romanzo's responsibilities include "compliance matters, supervision, implementation of firm policy, and general familiarity with each financial consultant and the accounts he or she services. (Romanzo Affidavit at ¶ 2). Ms. Romanzo states that 'customers whose accounts were serviced by Defendants have reported to Merrill Lynch

that they received telephone calls from Defendants over the weekend [October 23–24] soliciting them to transfer their accounts to Defendants at Dean Witter.'" (Romanzo Affidavit at ¶ 9). Ms. Romanzo goes on to state that "the largest account serviced by Defendant Rahn has reported to Merrill Lynch that Defendant Rahn contacted the account last week, *before he resigned from Merrill Lynch,* and solicited the customer to transfer to Dean Witter." (Romanzo Affidavit at ¶ 10);

(xi) Ms. Romanzo also states:

As a result of his employment at Merrill Lynch, Defendant Rahn acquired access to hundreds of Merrill Lynch accounts, representing over one hundred sixty million dollars in assets under Merrill Lynch management . . . Likewise, as a result of her employment at Merrill Lynch, Defendant Benderski acquired access to many Merrill Lynch accounts, representing millions of dollars in assets under Merrill Lynch management . . . (Romanzo Affidavit at ¶¶ 5–6);

(xii) at oral argument, counsel for both Plaintiff and Defendants advised the Court that Dean Witter had sent letters to some or all of the Merrill Lynch clients that were serviced by Defendants while they were employed at Merrill Lynch, advising them, among other things, that Defendants were now employed at Dean Witter. In her affidavit, Ms. Romanzo states that "the manager of Dean Witter's Beverly Hills office sent a letter to Merrill Lynch customers, which some customers reported receiving as early as Saturday [October 23, 1999], with Defendants new address and telephone numbers." (Romanzo Affidavit at ¶ 9);

A copy of one such letter is attached to Romanzo's affidavit as Exhibit A. The letter states, in relevant part, as follows:

Morgan Stanley Dean Witter is pleased to announce that Jacqueline Benderski has accepted a position as Financial Advisor.

Ms. Benderski's new office is located in Beverly Hills, California. Her mailing address and phone numbers [omitted for publication] are as follows . . .

Morgan Stanley Dean Witter
335 North Maple Drive, Ste. 150
Beverly Hills, CA 90210

(Romanzo Affidavit, Exhibit A); and

(xiii) at oral argument, counsel for Merrill Lynch advised the Court that some of the clients serviced by Defendants while they were employed at Merrill Lynch have submitted transfer of account documentation to Dean Witter.

## B. Law

█ "To obtain a preliminary injunction, a plaintiff must show (1) irreparable harm and (2) either (a) that it is likely to succeed on the merits or (b) sufficiently serious questions regarding the merits of the claim to make them fairly litigable, with the balance of hardships tipping decidedly in the plaintiff's favor." *Fun–Damental Too, Ltd. v. Gemmy Industries Corp.,* 111 F.3d 993, 998–99 (2d Cir.1997). *See also Ecolab, Inc. v. K.P. Laundry Machinery, Inc.,* 656 F.Supp. 894, 899 (S.D.N.Y.1987).

█ Here, Plaintiff has shown that Defendants have removed documents from Merrill Lynch and solicited (at least some) of the clients that they serviced while employed at Merrill Lynch. (*See* Romanzo Affidavit at ¶¶ 9–10, discussed above). By attempting to solicit and "siphon off" these clients, Defendants threaten the "lifeblood of [Plaintiff's] business." (Romanzo Affidavit at ¶ 16). Plaintiff will suffer irreparable harm absent a preliminary injunction. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley,* 756 F.2d 1048, 1055 (4th Cir.1985) ("Merrill Lynch faced irreparable, noncompensable harm in the loss of its customers"); *Velo–Bind v. Scheck,* 485 F.Supp. 102, 109 (S.D.N.Y. 1979) ("[b]y siphoning off plaintiff's carefully gleaned customers, defendants subject plaintiff to a definite possibility of

irreparable harm, which increases as long as it continues unrestrained"). *See also Ecolab, Inc.*, 656 F.Supp. at 899–900 ("Ecolab has demonstrated that it will suffer irreparable harm absent preliminary relief. There is a substantial showing that Ecolab can lose a great deal of business and profits if it is not accorded enforcement of its contractual covenant with its employees. The extent of the loss may be very difficult to measure to the point that Ecolab might not be fairly compensated if left to a damage remedy").

Further, based upon the facts discussed above, which, as noted, suggest strongly that Defendants removed confidential documents from Merrill Lynch and solicited customers that they serviced while employed at Merrill Lynch, the Court believes that Plaintiff is likely to succeed on the merits. *See, e.g., Velo–Bind,* 485 F.Supp. at 107–09; *Town & Country House & Home Service v. Newbery,* 3 N.Y.2d 554, 170 N.Y.S.2d 328, 147 N.E.2d 724 (1958).

Though not necessarily dispositive of these proceedings, the Court also notes that the various agreements which Plaintiff seeks to enforce against former account employees, and the injunctive relief sought by Plaintiff, are not uncommon in the financial services industry. The relief sought by Plaintiff (on similarly compelling facts) is consistently granted in this District. *See, e.g., Stephen Blumenthal and Les Fein v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* No. 89 Civ. 1209 (S.D.N.Y. Feb. 23, 1989). Plaintiff has also provided the Court with precedents that suggest that Dean Witter (Defendants' new employer) consistently seeks to enforce agreements similar to those at issue here and has obtained similar injunctive relief. (*See* Letter from William T. Marshall Jr. dated November 1, 1999, and particularly Exhibits A–E). For example, in *Dean Witter Reynolds Inc. v. Robert L. McMillan Jr.,* No. C–3–99–079 (D.Md. Feb. 23, 1999), Dean Witter sought to enforce an agreement executed by defendant Robert McMillan Jr. which, among other things, contained restrictions on McMillan's ability to use Dean Witter's records and to solicit Dean Witter employees and clients after leaving Dean Witter's employment. By Order dated February 23, 1999, the Federal District Court in Maryland granted Dean Witter's motion for a temporary restraining order upon terms similar to those set forth by Judge Pollack in the case at bar. (*See* Letter from William T. Marshall Jr. dated November 1, 1999, Exhibit A).

### III. *Order*

Based upon the foregoing, it is Ordered that:

(1) Defendants are preliminarily enjoined and restrained, directly or indirectly, and whether alone or in concert with others, including any officer, agent, representative, and/or employee of Defendants' present employer, Dean Witter, from:

(a) soliciting any business from any client of Merrill Lynch whom Defendants served or whose name became known to Defendants while employed by Merrill Lynch (the "Clients"), and from accepting any business or account transfers from the Clients whom Defendants have solicited at any time in the past regarding Defendants' new employment with Dean Witter (excluding Defendants' immediate family and those Merrill Lynch customers who reside more than one hundred (100) miles from Merrill Lynch's Grand Central Financial Complex); and

(b) using, disclosing, or transmitting for any purpose, including solicitation of the Clients, the information contained in the records of Merrill Lynch, including, but not limited to, the names, addresses, and financial information of the Client;

(2) Dean Witter is to mail the following message to: (a) Clients, to whom Dean Witter previously mailed transfer documentation, upon receipt of completed transfer documentation from these clients; and (b) to any Clients to whom going forward Defendants initiate contact regarding their new employment with Dean Witter:

Dear [CLIENT NAME]

In connection with a contract dispute between [DEFENDANT NAME] and Merrill Lynch, a court has temporarily enjoined Dean Witter from conducting business with you. As a result, we are unable to process an account transfer at this time. We hope that this matter will be resolved in the near future.

Very truly yours,

(3) The parties are directed to proceed toward an expedited arbitration hearing on the merits before a duly appointed panel of arbitrators in accordance with Rule 10335(g) of the National Association of Securities Dealers Code of Arbitration Procedure;

(4) The security provisions set forth by Judge Pollack in the TRO are continued;

(5) This preliminary injunction shall remain in effect for 60 days or until a final arbitration decision, which ever event occurs first; and

(6) The case is calendared for control purposes for January 3, 2000. Counsel are directed to advise the Court in writing on or before January 3, 2000 as to the status of the arbitration.